SHERMAN L. STACEY, ESQ. (State Bar No. 62879)
GAINES & STACEY LLP
3197-A Airport Loop Dr.
Costa Mesa, CA  92626
Telephone:  949-640-8999
Facsimile: 714-434-1111
Email: sstacey@gaineslaw.com

Attorneys for Plaintiff Patrick Lustig

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(Southern Division)

| | |
|---|---|
| PATRICK LUSTIG, an individual<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LAGUNA BEACH, a Municipal corporation, DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.   8:22-CV-1945<br><br><br>COMPLAINT FOR DAMAGES FOR TAKING OF REAL PROPERTY (42 U.S.C. §1943) |

## **INTRODUCTION**

Plaintiff desires to construct a single-family home on his property located in Laguna Beach; however, Defendant City of Laguna has determined that no development can be approved for Plaintiff's Property.  As described in more detail below, following Plaintiff's submission of a plan for the development of Plaintiff's

1

Property to the Planning Department of the City of Laguna Beach, the City responded that the Plaintiff's Property was not a building site as defined by the City of Laguna Beach Zoning Code and no permit to develop the Plaintiff's Property could be approved. Defendant City has determined that certain provisions of its laws do not permit the construction of any structure on Plaintiff's Property and that the Defendant City has no lawful authority to vary from these certain provisions.  Given the City's decision not to approve any future development on Plaintiff's Property, it would be fruitless for Plaintiff to submit any further revisions to plans for a residence on Plaintiff's Property or plans for the extension of Juanita Way (the street adjacent to Plaintiff's Property).  Since the City has refused to allow Plaintiff to approve any development of Plaintiff's Property, including access to the public right of way, the City has deprived Plaintiff of all reasonable economic use of Plaintiff's Property which under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), has been an unlawful taking of Plaintiff's Property without compensation under the Fifth and Fourteenth Amendments of the United States Constitution.

## **JURISDICTION**

1.     Federal jurisdiction exists for the relief sought in this Complaint under 42 U.S.C. §1983 which provides, in part, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Plaintiff Patrick Lustig owns real property within the jurisdiction of the Defendant City of Laguna Beach which has adopted plans and ordinances which for public benefit prohibit Plaintiff from any use of Plaintiff's Property.

## PARTIES

2.      Plaintiff Patrick Lustig is an individual residing with the County of Orange, State of California.

3.      Defendant CITY OF LAGUNA BEACH is a Municipal corporation organized under the laws of the State of California.

4.      Plaintiff is unaware of the names or identities of Defendants DOES 1 through 10, inclusive, and upon determining any of such names or identifies will seek to amend this Complaint setting forth such true names and identities.

## PLAINTIFF'S PROPERTY

5.      On or about October 28, 2015, Plaintiff purchased real property within the jurisdiction of the Defendant City legally described as Lots 7 and 8 in Block 14 of Pacific View Tract, Tract No. 26 as per map recorded in Book 10, Pages 23 to 25, inclusive, of Miscellaneous Maps in the office of the County Recorder of the County of Orange, State of California.  Said real property is hereinafter referred to as the

"Plaintiff's Property".  The Pacific View Tract, Tract No. 26 is hereinafter referred to as "Pacific View Tract".

6.     Lots 7 and 8 front on Lot J of Pacific View Tract.  Lot J is currently known as Juanita Way, and is hereinafter referred to as "Juanita Way".

7.     The Plaintiff's Property consists of two Lots each of which has 40 feet of street frontage on Juanita Way for a total of 80 feet of street frontage.  The area of the Plaintiff's Property is approximately 7,200 square feet.

8.     The portion of the public right of way for Juanita Way on which Plaintiff's Property fronts is not improved as a street.

9.     The improved portion of Juanita Way terminates at the southwest corner of Plaintiff's Property.

10.     The Plaintiff's Property is characterized by being sloped from its southeast Boundary descending to its northwest boundary.

## THE SUBDIVISION OF THE AREA SURROUNDING PLAINTIFF'S PROPERTY

11.     The subdivision map for Pacific View Tract was recorded on or about October 21, 1917.

12.     At the time the subdivision map for Pacific View Tract was recorded, the real property subdivided as Pacific View Tract was in an unincorporated area of the County of Orange.

13.     The subdivision map for Pacific View Tract laid out the subdivision of approximately 334 numbered Lots (each of which is hereafter referred to as a "Lot"), organized within 33 Blocks.  Attached hereto as Exhibit A, and incorporated herein, is a true and correct copy of the 1917 recorded subdivision map for Pacific View Tract on which the Plaintiff's Property is identified on Page 3 by a red outline.

14.     The subdivision map for Pacific View Tract identified numerous lettered Lots which were intended, and are now substantially improved, as public streets.

15.     Lot A and Lot F of Pacific View Tract are generally 40 feet in width.  Lot A is currently identified as Alta Vista Avenue.  Lot A is hereinafter referred to as "Alta Vista Avenue".  The remaining lettered Lots in Pacific View Tract, Tract No. 26, including Juanita Way are generally 30 feet in width.

16.     All of the lettered lots within Pacific View Tract have been accepted as public streets either by the County of Orange prior to incorporation or annexation to the Defendant City or by the Defendant City after incorporation or annexation to Defendant City.

17.     To the extent that any of the lettered Lots or portions of the lettered Lots in Pacific View Tract are improved as streets, the Defendant City maintains such streets.

/ / /

/ / /

COMPLAINT FOR DAMAGES FOR TAKING OF REAL PROPERTY

18.     To the extent that any of the lettered Lots or portions of the lettered Lots in Pacific View Tract are not improved as streets, the Defendant City holds a public right of way over such lettered Lot, including the portion of Juanita Way adjoining the Plaintiff's Property.

19.     The majority of which Lots within the Pacific View Tract measure 40 feet of frontage on a street and 90 feet of depth from the street forming a rectangle measuring 40 feet by 90 feet which totals 3,600 square feet in area.

20.     Between 1917 and 2021, most of the lettered Lots laid out as streets had been improved as streets, although some of the lettered Lots, including Juanita Way, were not improved as streets over the entire length of such lettered Lots.

21.     Between 1917 and 2021, approximately 207 single family homes have been built upon Lots within the Pacific View Tract.

22.     Of the approximately 207 single family homes built and currently existing within the Pacific View Tract, approximately 172 of such homes are built upon one Lot and approximately 35 of such homes are built upon more than one Lot.

## EXISTING DEVELOPMENT ALONG JUANITA WAY

23.     Juanita Way is a dead end street which is improved for a distance of approximately 550 feet in a northwesterly direction from the intersection of Juanita Way and Alta Vista Avenue.

/ / /

24.     From the intersection of Juanita Way with Alta Vista Avenue, Juanita Way descends along a slope reaching a slope of almost 30% over the last approximately 200 feet before its dead end.

25.     Between the Plaintiff's Property and Alta Vista Avenue on the same side of Juanita Way as the Plaintiff's Property, the subdivision map divided the land into Block 14 and Block 20 of Pacific View Tract.

26.     In Block 14 of Pacific View Tract, the subdivision map created 12 lots, 10 of which measure 40 feet by 90 feet.  Lots 9, 10 and 11 are each improved with one single family residence.  Lots 1 and 2 are irregular in shape and improved with one single family residence which takes access from Fern Street.  Lots 3, 4, 5, 6, 7 and 8 are unimproved.

27.     In Block 20 of Pacific View Tract, the subdivision map created 16 lots. Lots 1, 2, 3, 4 and 5 in Block 20 each measure 40 feet by 90 feet and are each improved with one single family residence which takes vehicle access from Lot I, now commonly known as Iris Way.

28.     Lots 6 and 7 in Block 20 were resubdivided with Lot 14 of Block 20 to create a parcel with 80 feet of frontage on Juanita Avenue but with irregular depth between approximately 30 feet and 40 feet, the resubdivided lot being improved with one single family residence.

/ / /

29.     Lots 8, 9, 10, 11 and 12 in Block 20 each measure 40 feet along Juanita Way or Alta Vista Avenue but have a depth of only 65 feet resulting in an area of 2,400 square feet.  Lots 8, 9, 11 and 12 are each improved with a single family residence.  Lot 10 is unimproved.  Lots 10, 11 and 12 take vehicle access from Alta Vista Avenue.

30.     The southwest side of Juanita Way across Lot J from the Plaintiff's Property was subdivided into Block 15 and Block 19 of Pacific View Tract.

31.     Block 15 of Pacific View Tract was subdivided into 11 lots each of which is 40 feet by 90 feet except Lots 1 and 2 of Block 15 which are irregular in shape.

32.     In Block 15 of Pacific View Tract, Lots 8, 9, 10 and 11 are each developed with one single family residence and Lots 6 and 7 have been combined and are improved with one single family residence.

33.     Block 19 of Pacific View Tract was subdivided into 10 Lots each of which is 40 feet by 90 feet except Lot 11 which is 30 feet by 90 feet.

34.     In Block 19 of Pacific View Tract, Lots 1, 3, 4, 5, 6, 7, 8, 9 and 10 are each improved with one single family residence.  Lot 2 is unimproved.

35.     As of August 2021 the Pacific View Tract is characterized by highly dense single family residential development generally on lots of 3,600 square feet with some improved lots smaller than 3,600 square feet and some improved lots larger than 3,600 square feet.

36.     Attached hereto as Exhibit B, and incorporated herein, is a true and correct copy of an aerial depiction of the area surrounding Juanita Way taken from the Defendant City GIS mapping system on which the Plaintiff's Property is identified by a red outline.

37.     As of August 16, 2021, the value of Plaintiff's Property was, and is today, $4,000,000 if free of the unlawful and unreasonable restrictions imposed by Defendant City for the purpose of depriving Plaintiff of Plaintiff's Property for public use and benefit as described in this Complaint.

## THE MUNICIPAL LAW AUTHORITY OF THE DEFENDANT CITY OF LAGUNA BEACH

38.     The Defendant City was incorporated on June 29, 1927 as a Municipal Corporation operating as a general law city under the laws of the State of California.

39.     Plaintiff's Property is located within the political jurisdiction of the Defendant City.

40.     The Defendant City maintains a Zoning Code enacted pursuant to the Planning and Zoning Law of the State of California.  The City Zoning Code is Chapter 25 of the City Municipal Code.

41.     The Defendant City maintains a Subdivision Code enacted pursuant to the Planning and Zoning Law of the State of California.  The City Subdivision Code is Chapter 21 of the City Municipal Code.

42.     The Defendant City maintains a Streets and Sidewalks Code.  The City Streets and Sidewalks Code is Chapter 11 of the City Municipal Code.

43.     The Defendant City has a General Plan, including an Open Space and Conservation Element, adopted as required by the Planning and Zoning Law of the State of California.

44.     The Defendant City has a Local Coastal Program enacted pursuant to the California Coastal Act of 1976, which Local Coastal Program has been certified by the California Coastal Commission as consistent with the policies of Chapter 3 of the California Coastal Act of 1976.

45.     The Defendant City has adopted a Zoning Map which designates the Plaintiff's Property as being within Zone R1 which Municipal Code §25.10.004 and §25.10.008 appear to allow the construction of a single family residence on a lot of not less than 6,000 square feet in area having a minimum width of 70 feet and a minimum depth of 80 feet.

46.     The Defendant City has adopted a land use map as part of the Land Use Element of its General Plan on which the Plaintiff's Property has been designated as very low density allowing up to 7 dwelling units per acre or one dwelling unit for every 6,222 square feet of land.

/ / /

/ / /

47.     The Defendant City has adopted a definition of a "Building Site" in its Municipal Code §25.08.004 which overrides the provisions of the R1 zone and prohibits development of any property which does not meet the definition of a Building Site.

48.     The scheme of land use regulations contained in the Defendant City Zoning Code, Subdivision Code, Streets and Sidewalks Code, General Plan and Local Coastal Program create a permit system by which no person, including Plaintiff, may develop or otherwise make any use or improvement of any real property within the City of Laguna Beach without obtaining one or more permits from the City of Laguna Beach, each of which permits require the Defendant City to make specific factual findings in order to approve each such permit.

## PLAINTIFF'S EFFORTS TO BUILD A HOUSE ON PLAINTIFF'S PROPERTY

49.     Commencing on September 9, 2016 and continuing through August 15, 2021, Plaintiff has sought permission from the Defendant City to construct a single family residence on Plaintiff's Property.

50.     Generally, communications concerning the Plaintiff's Property were conducted on behalf of Plaintiff by an architect, Brion Jeannette, who was employed as an agent for Plaintiff.  Plaintiff also engaged several engineers, geologists, geotechnical engineers, fire design experts, biologists and other qualified professionals

to assist Plaintiff as his agents in communicating with the Defendant City.  As used herein, when the term Plaintiff is used in Paragraphs 51 to  below, it is intended to include the Plaintiff and any agent of the Plaintiff acting on behalf of the Plaintiff as principal.

51.     On or about September 9, 2016, Plaintiff submitted a plan for the development of Plaintiff's Property to the Planning Department of the City of Laguna Beach which plan depicted a short driveway from the end of Juanita Way to the Plaintiff's Property to provide access for Plaintiff to Juanita Way.

52.     On or about September 12, 2016, the Plaintiff received a written response from the Defendant City accompanied by a return of Plaintiff's application with the statement that the Plaintiff's Property was not a building site as defined by the City of Laguna Beach Zoning Code and no permit to develop the Plaintiff's Property could be approved.

53.     On or about September 29, 2016, Plaintiff met with Scott Drapkin, an employee of the Defendant City within the City Planning Department.  On behalf of the Defendant City, Drapkin stated to Plaintiff (1) that in order to be a building site, the Plaintiff's Property must have street frontage for a distance of not less than 10 feet on an improved public street; (2) that it would be necessary for Plaintiff to obtain the permission of the Defendant City to perform any improvement within the right of way for Juanita Way abutting the Plaintiff's Property; and (3) that the improvement of

Juanita Way would need to be approved by the Fire Department along with other departments of the Defendant City.

54.    On or about November 16, 2016, Plaintiff met with City of Laguna Beach Fire Chief Edward Valdez.  Valdez stated that the Fire Department would not approve an extension of Juanita Way unless the design of such extension would allow for a 32 foot long fire truck to turn around within such extension.

55.    Subsequent to November 16, 2016, Plaintiff developed a plan for a fire truck turnaround within an extension of Juanita Way based upon a design commonly known as a "hammerhead".  The hammerhead design was a design acceptable to the Orange County Fire Authority.

56.    The hammerhead fire truck turnaround required that the Plaintiff extend Juanita Way for a distance of not less than 40 feet and that the design of improvements on Plaintiff's Property would need to include a paved area where the fire truck could maneuver on up to 40 feet of Plaintiff's Property.

57.    On or about March 15, 2017, Plaintiff submitted plans for the hammerhead fire truck turnaround and fire suppression measures to the City Fire Department for review.

58.    On or about March 17, 2017, Plaintiff met with City Fire Chief Valdez at the Plaintiff's Property.  Fire Chief Valdez stated that the hammerhead design and the suppression systems would be acceptable subject to review and approval of final

13

design and fuel modification plans for the vegetation surrounding the Plaintiff's

Property.

59.     On or about April 20, 2017, Plaintiff submitted to Defendant City fuel

modification plans along with more detailed plans for the fire truck turnaround.

60.     On a date unknown to Plaintiff between April 15, 2017 and June 30, 2017,

Fire Chief Valdez retired.  The Fire Marshall position was filled by Jim Brown.

61.     On or about July 14, 2017, Plaintiff submitted an application to the

Defendant City for the extension of Juanita Way in accordance with the hammerhead

design which Fire Chief Valdez had stated was acceptable.

62.     On or about August 28, 2017, the Plaintiff received written comments

from the Defendant City on the application for the extension of Juanita Way.  The

Defendant City comments included, among other things, a request for a biological

evaluation of existing vegetation and measures to protect the intermittent watercourse

which was downslope from the Plaintiff's Property.

63.     On or about November 6, 2017, Plaintiff met with the Defendant City

accompanied by a Biologist and discussed the street extension and any environmental

review requirements which might apply.

64.     On or about December 7, 2017, Plaintiff met with employees of the

Defendant City Planning Department to review revisions to plans.

/ / /

65.     On or about January 7, 2018, Fire Marshal Brown stated to Plaintiff that the hammerhead design for the turnaround would not be acceptable and that a cul-de-sac with a diameter of 62 feet was necessary to approve the road extension for Juanita Way.

66.     A cul-de-sac 62 feet in diameter would require a much greater extension of Juanita Way than the hammerhead design, including a larger retaining wall, and a much larger area of the Plaintiff's Property be included in the paved area and easement to Defendant City left open for the turnaround.

67.     Between on or about February 1, 2018, and December 1, 2018, Plaintiff evaluated the design, costs and impact of the cul-de-sac design.  Plaintiff evaluated other alternative designs that might be less costly, occupy less of Plaintiff's Property and be less visually prominent.

68.     Also between on or about November 1, 2018 and May 1, 2019, Plaintiff proceeded to prepare a design which would comply with the cul-de-sac requirement. Plaintiff first communicated to the City that the cul-de-sac could be constructed on caissons like a bridge.  The City Department of Public Works stated that it would not accept a street supported by caissons.

69.     On or about May 30, 2019, Plaintiff and its architect, fire safety consultant and attorney met with the City Manager, Director of Public Works, Fire Marshal, and Director of Community Development at Laguna Beach City Hall.

Plaintiff pled with the Defendant City officials to accept some alternative design to the retaining wall cul-de-sac.  At the conclusion of the meeting, the City did not change its position that any street extension of Juanita Way would require the construction of the retaining wall supported cul-de-sac.

70.    The retaining wall supported cul-de-sac was acceptable to the City Fire Marshall. Extension of Juanita Way would require the construction of the retaining wall supported cul-de-sac and the dedication to the Defendant City of an easement on Plaintiff's Property for the area covered by the cul-de-sac.

71.    Subsequent to the rejection by the City Department of Public Works of a caisson supported cul-de-sac, Plaintiff produced a retaining wall supported cul-de-sac.

72.    This retaining wall design required retaining walls as high as 35'-42' to secure approximately 1900 cubic yards of fill on which the finished cul-de-sac would be placed.  The size of the retaining walls necessary for the cul-de-sac design dwarfed the house that Plaintiff was able to design on the portion of the Plaintiff's Property that remained available after taking out the area for the cul-de-sac.

73.    On or about July 26, 2019, Plaintiff submitted plans for the retaining wall cul-de-sac for Planning Commission review.

74.    On or about October 16, 2019, the Planning Commission conducted a publicly noticed public hearing at Laguna Beach City Hall.  Neighboring property owners appeared to unanimously object to the retaining wall cul-de-sac.  At the

COMPLAINT FOR DAMAGES FOR TAKING OF REAL PROPERTY

conclusion of the public hearing the Planning Commission would not approve the retaining wall cul-de-sac.

75.     By October 16, 2019, Plaintiff had become very discouraged at the three years that had been spent with the Defendant City to get approval to extend the physical street which was subject to a public right of way owned and possessed by the Defendant City fronting the Plaintiff's Property, only to experience one department of the Defendant City requiring a particular street improvement, which another department of the Defendant City would not allow.

76.     Plaintiff continued to work on redesign which might get approved by the Defendant City. On or about June 1, 2020, Plaintiff submitted to the Defendant City a second design for the construction of a single family residence on Plaintiff's Property and the extension of Juanita Way.

77.     On or about July 14, 2020, the Defendant City sent to Plaintiff a written refusal to accept Plaintiff's application for construction of a single family residence on Plaintiff's Property and the extension of Juanita Way on the grounds that the Application was not complete due to the inconsistency of the plans submitted in the Plaintiff's Application with the City's Zoning Code, Subdivision Code, Streets and Sidewalks Code and General Plan.

/ / /

/ / /

78.     Subsequent to July 14, 2020, Plaintiff modified the design for the construction of a single family residence on Plaintiff's Property and the extension of Juanita Way in an effort to meet the Defendant City's alleged inconsistencies with the City's Zoning Code, Subdivision Code, Streets and Sidewalks Code and General Plan.

79.     On or about May 13, 2021, Plaintiff submitted to the Defendant City another modified design for construction of a single family residence on Plaintiff's Property and the extension of Juanita Way.

80.     On or about August 16, 2021, the Defendant City responded in writing stating that the Plaintiff's Application was not complete due to inconsistencies with City Zoning Code, Subdivision Code, Streets and Sidewalks Code and General Plan. A true and correct copy of the Defendant City letter is attached hereto as Exhibit C.

81.     The Defendant City's August 16, 2021 letter further stated that Plaintiff could seek variances from some of the provisions of the Zoning Code, Subdivision Code, Streets and Sidewalks Code and General Plan but that other provisions of the Zoning Code, Subdivision Code, Streets and Sidewalks Code, General Plan and Local Coastal Program were not subject to any variance.

82.     In order to obtain permission of the Defendant City to construct any structure on Plaintiff's Property, the Plaintiff is required to demonstrate to the Defendant City, and the Defendant City is required to make a finding of fact, that the

structure can be constructed consistent with the City's Zoning Code, Subdivision Code, Streets and Sidewalks Code, General Plan and Local Coastal Program.

83.     Without the permission of the Defendant City the Plaintiff cannot lawfully construct any structure, including but not limited to a single family residence, on the Plaintiff's Property.

84.     The provisions of the Zoning Code, Subdivision Code, Streets and Sidewalks Code, General Plan and Local Coastal Program would not allow any structure to be constructed on the Plaintiff's Property, and the Defendant City has stated no variance from such laws can be granted.

85.     The Defendant City has adopted and enforced provisions of its Zoning Code, Subdivision Code, Streets and Sidewalks Code, General Plan and Local Coastal Program in a manner designed for the purpose and intent of benefitting the general population of the Defendant City by depriving an owner of property, including Plaintiff, from any reasonable economic use of property, including Plaintiff's Property.

86.     The Defendant City has not offered and does not intend to offer any compensation to Plaintiff for the loss to Plaintiff from the Defendant City's prohibition of any reasonable economic use of Plaintiff's Property.

87.     The Plaintiff is relieved from the necessity to further process his Application to construct a single family residence on the Plaintiff's Property and extend Juanita Way because the Defendant City has determined that certain provisions

of its laws do not permit the construction of a any structure on Plaintiff's Property and that the Defendant City has no lawful authority to vary from these certain provisions which are described in greater detail in Paragraphs 95 through 150 below.

88.     It would be fruitless for Plaintiff to submit any further revisions to plans for a residence on Plaintiff's Property or the extension of Juanita Way as the Defendant City is obligated by its own laws to refuse to approve any such improvements.

89.     The City has firmly rejected the Plaintiff's request to be able to build a home on the Plaintiff's Property by applying provisions of its codes and laws from which the City states with finality that it may not allow any variance, and the City has reached a conclusive position.

90.     The City has firmly rejected the Plaintiff's request to extend Juanita Way in any meaningful fashion that would provide access to Plaintiff's Property by applying provisions of its codes and laws from which the City states with finality that it may not allow any variance, and the City has reached a conclusive position.

91.     The express objective of the City in adopting and applying the codes described in Paragraphs 40 through 48, above, and Paragraphs 95, 105, 114, 117, 140, 141, 142 and 148, below, is to preserve for public benefit certain aesthetic and environmental aspects of the Plaintiff's Property and to place the entire burden to provide that public benefit upon the Plaintiff by preventing Plaintiff from using

Plaintiff's Property in any manner, including the manner in which other property similarly situated within the Pacific View Tract and elsewhere in the City has been developed with single family homes.

92.     In *Knick v. Township of Scott, Pennsylvania*, 588 U.S. ___ , 139 S.Ct. 2162 (2019), the United States Supreme Court established that a claim for taking of property without compensation under 42 U.S.C. §1983 could be brought directly in the Federal Courts, and expressly overruled the decision in *Williamson County Regional Planning Commission v. Hamilton Bank*, 42 U.S. 172 (1985) which required that a party must exhaust state court remedies before the Federal Courts could take jurisdiction over a taking claim.

## **FIRST CLAIM**

(42 U.S.C. §1983; Regulatory Taking of Property Without Compensation)

93.     Plaintiff realleges all of the allegations contained in Paragraphs 1 through 91 of this Complaint as though fully set forth herein.

94.     In *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), the United States Supreme Court ruled that a government regulation which has the effect of depriving an owner of property of all reasonable economic use of that property was an unlawful taking of that property without compensation under the Fifth and Fourteenth Amendments of the United States Constitution.

/ / /

95.    The City laws prohibit any use of the Plaintiff's Property as described in Paragraphs 95 to 150 below.

96.    The City states that its Open Space and Conservation Element of its General Plan, Policy 14B prohibits development on slopes which exceed 45% grade.

97.    A slope in excess of 45% grade is a slope of the surface of the land which is greater than 24.23°.

98.    There is no location on Plaintiff's Property where a single family residence or any other inhabitable structure can be constructed which would not be located on slopes that exceed 45% grade.

99.    There is no geologic, geotechnical, engineering or soil condition which makes construction on the existing grades of the Plaintiff's Property, including areas where the grade exceeds 45%, unsafe or dangerous.

100.    There are numerous Lots within Pacific View Tract where structures approved by the City have been constructed on slopes that exceed 45%.

101.    There are numerous structures approved by the City outside of Pacific View Tract which have been constructed on slopes that exceed 45%.

102.    The City has no power to allow a variance from the provisions of its Open Space and Conservation Element Policy 14B of the City's General Plan that prohibit construction on slopes that exceed 45%.

/ / /

103.    The City's purpose in the adoption and enforcement of Open Space and Conservation Element Policy 14B of the City's General Plan is to provide to the public a certain aesthetic and visual benefit from the absence of structures on certain slopes, including the slope located on the Plaintiff's Property.

104.    The actions of the Defendant City described in this First Claim result in damages to Plaintiff of $4,000,000.00 for the just compensation for the loss of all reasonable economic use of Plaintiff's Property.

## SECOND CLAIM

(42 U.S.C. §1983; Regulatory Taking of Property Without Compensation)

105.    Plaintiff realleges all of the allegations contained in Paragraphs 1 through 104 of this Complaint as though fully set forth herein.

106.    The Defendant City states that its Open Space and Conservation Element of its General Plan, Policy 8N prohibits intrusion of fuel modification programs into environmentally sensitive areas, including chaparral and coastal sage scrub.

107.    The Defendant City has adopted a map in its General Plan which identifies an open space preserve area which includes Plaintiff's Property.

108.    The Defendant City has adopted a map in its General Plan which identifies environmentally sensitive areas which includes Plaintiff's Property.

/ / /

109.    The Plaintiff's Property and other property to the north and west of Plaintiff's Property contains areas of chaparral and coastal sage scrub.

110.    The Defendant City states that development on Plaintiff's Property cannot be found consistent with the City's Open Space and Conservation Element because Plaintiff's Property is located at the "urban-wildland interface" which would require modification of a strip of land where combustible vegetation in an open space, chaparral and coastal sage scrub is required by the City Fire Code to be removed.

111.    The Defendant City states that the Open Space and Conservation Element of the General Plan prohibits Plaintiff from constructing a residence on Plaintiff's Property because the Fire Code would require modification of combustible vegetation both on Plaintiff's Property and other property which is prohibited by the Open Space and Conservation Element of the General Plan.

112.    The Defendant City states that it has no power to allow a variance from the requirement that no new structure can be constructed on Plaintiff's Property due to the City requirement to modify combustible vegetation which the City prohibits.

113.    The actions of the Defendant City described in this Second Claim result in damages to Plaintiff of $4,000,000.00 for the just compensation for the loss of all reasonable economic use of Plaintiff's Property.

/ / /

/ / /

## **THIRD CLAIM**

(42 U.S.C. §1983; Regulatory Taking of Property Right to Access Public Street)

114.    Plaintiff realleges all of the allegations contained in Paragraphs 1 through 113, and of this Complaint as though fully set forth herein.

115.    The Defendant City has adopted Open Space and Conservation Element, Policy 14C of the City General Plan which prohibits construction of a street extension which would be more than 14% in grade.

116.    The grade of Juanita Way at the point where Juanita Way ends is approximately 27.60%.

117.    It is physically impossible for Plaintiff to improve an extension of Juanita Way and transition from an existing improved grade of 27.60% to a grade of not greater than 14% without having intervening grades gradually reducing to less than 14% grade.

118.    The City Streets and Sidewalks Code requires that there be a transition between slopes on streets to avoid harm to vehicles and persons using the street from an abrupt change in the grade of a street.

119.    It is a standard engineering practice in the design of streets to have transitions between the angle of streets to avoid harm to vehicles and persons using the street from abrupt change in the grade of a street.

/ / /

COMPLAINT FOR DAMAGES FOR TAKING OF REAL PROPERTY

120.    The Defendant City requires that there must be a transition between The existing 27.60% slope of Juanita Way and any extension of Juanita Way.

121.    The Defendant City prohibits the development an extension of Juanita Way because the extension would contain slopes that exceed 14% even though it is the Defendant City's own laws that require slopes in excess of 14%.  One provision of the City Code prohibits a grade in excess of 14% while a different provision of the City Code requires a grade in excess of 14%.

122.    Plaintiff has a recognized property right under California law to have access to a public right of way which abuts Plaintiff's Property.

123.    The Defendant City is the holder of the right of way in Juanita Way including the portion which abuts the Plaintiff's Property.

124.    Application of the City Codes and Plans to prohibit the extension of Juanita Way deprives Plaintiff of his right of access to a public street.

125.    Defendant City has interpreted and applied its Codes and Plans with the intention of preventing Plaintiff from having any access from Plaintiff's Property to Juanita Way.

126.    Defendant City has no power to vary from the prohibition on street grades in excess of 14%.

/ / /

/ / /

COMPLAINT FOR DAMAGES FOR TAKING OF REAL PROPERTY

127.    Defendant City has taken Plaintiff's right to access Plaintiff's

Property from Juanita Way, a valuable and recognized property right which has the

consequence of prohibiting Plaintiff from making any reasonable economic use of

Plaintiff's Property.

128.    Defendant City has damaged Plaintiff in the amount equal to the

fair market value which Plaintiff's Property would enjoy absent the Defendant City's

intent to take Plaintiff's Property for public benefit without compensation.

129.    The actions of the Defendant City described in this Third Claim

result in damages to Plaintiff of $4,000,000 for the just compensation for the loss of

access to Juanita Way.

## FOURTH CLAIM

 (42 U.S.C. §1983; Regulatory Taking of Property Without Compensation)

130.    Plaintiff realleges all of the allegations contained in Paragraphs 1

through 129 of this Complaint as though fully set forth herein.

131.    None of the dead end streets in the Pacific View Tract, including

Juanita Way, are improved with fire truck turnaround areas.

132.    In order to allow Plaintiff to improve Juanita Way along the

frontage of Plaintiff's Property, the City unreasonably, and with the intent to deprive

Plaintiff of his property, implemented a demand for an improvement of a fire truck

turnaround, the benefit of which was for other property fronting Juanita Way and

27

which was not roughly proportional to the impacts of extending Juanita Way and constructing a residence on Plaintiff's Property.

133.    The purpose and objective of the Defendant City in requiring the fire truck turnaround was to discourage Plaintiff from continuing to seek to extend Juanita Way and abandon any effort to construct a residence on Plaintiff's Property.

134.    The first design of the fire truck turnaround as a hammerhead which was acceptable to Fire Chief Valdez was not sufficient to deter Plaintiff from seeking to extend Juanita Way or construct at residence on Plaintiff's Property.

135.    Because Plaintiff was not deterred by the hammerhead design, Defendant City changed its requirement to a cul-de-sac which was far more costly and required dedication of greater portions of Plaintiff's Property to such an extent that construction of a residence on the remainder would be difficult.

136.    The cul-de-sac design was so outrageous that the City Planning Commission would not endorse the design.

137.    The City Fire Department would not accept any design other than the cul-de-sac which was not acceptable to the City Planning Commission, leaving Plaintiff in a "catch-22" position where he could do no street extension whatsoever.

138.    Both the hammerhead and the cul-de-sac fire truck turnaround designs required the dedication to the Defendant City of the area to be occupied by the turnaround that was within the Plaintiff's Property.

139.    The hammerhead fire truck turnaround required the dedication of 1181 square feet of Plaintiff's Property to the Defendant City, reducing the remainder of the Plaintiff's Property not affected by the dedication to 5993 square feet.

140.    The cul-de-sac fire truck turnaround required the dedication of 1988 square feet of Plaintiff's Property to the Defendant City, reducing the remainder of the Plaintiff's Property not affected by the dedication to 5186 square feet.

141.    The City Land Use Element of the General Plan requires that Plaintiff's Property have not less than 6,222 square feet of area not encumbered by dedication to the City and no variance from this requirement is allowed by the City.

142.    The City Subdivision Code Section 21.12.360 requires that the Plaintiff's Property must maintain sufficient dimensions to encompass an imaginary rectangle which conforms to the minimum width and depth requirements of the R1 Zone which is a width of 70 feet and a depth of 80 feet.

143.    The City Open Space and Conservation Element, Policy 14G prohibits fill within hillside areas unless necessary for public health and safety.

144.    The Defendant City has no legal authority to allow a variance from the Requirement that the area of Plaintiff's Property be a minimum of 6,222 square feet.

145.    The Defendant City has no legal authority to vary from the requirement that the Plaintiff's Property have an imaginary rectangle of not less than 70 feet of width and 80 feet of depth.

COMPLAINT FOR DAMAGES FOR TAKING OF REAL PROPERTY

146.    The Defendant City has no legal authority to vary from the requirement that no fill be placed within the hillside areas.

147.    Without the dedication for a fire truck turnaround the Plaintiff's Property has an area of 7,200 square feet and a width in excess of 70 feet and a depth in excess of 80 feet.

148.    With the dedication required for either the hammerhead design or the cul-de-sac design for the fire truck turnaround, the Plaintiff's Property does not have 6,222 square feet of area, and the Plaintiff's Property does not have an imaginary rectangle measuring 70 feet in width by 80 feet in depth.

149.    By requiring a fire truck turnaround as part of the extension of Juanita Way, by requiring that the slope of Juanita Way be no more than 14%, and by prohibiting access to the Plaintiff's Property to be placed on a caisson supported bridge, the City requires that fill be placed within the Juanita Way right of way which the City then claims is prohibited by Open Space and Conservation Element, Policy 14G for which no variance is allowed.

150.    The Defendant City has used the demand for a fire truck turnaround as a scheme and artifice to deny Plaintiff all reasonable economic use of Plaintiff's Property without payment of just compensation.

/ / /

/ / /

151.    The actions of the Defendant City described in this Fourth Claim result in damages to Plaintiff of $4,000,000 for the just compensation for the loss of all reasonable economic use of Plaintiff's Property.

## FIFTH CLAIM

(42 U.S.C. §1983; Denial of Equal Protection of the Laws)

152.    Plaintiff realleges all of the allegations contained in Paragraphs 1 through 151 of this Complaint as though fully set forth herein.

153.    The majority of the Lots which have been approved by the Defendant City to be improved with single family residences in the Pacific View Tract have been 3,600 square feet in area.

154.    Many of the Lots within the Pacific View Tract, including some of the Lots developed on Juanita Way, are located on streets dedicated to and accepted by the Defendant City and maintained by Defendant City which have slopes greater than 14%.

155.    The Defendant City has adopted the provisions of the Zoning Code, the Subdivision Code, the Streets and Sidewalks Code, the General Plan and the Local Coastal Program for the express purpose of preventing development of private property, including Plaintiff's Property, which does not presently front on the improved portions of the dedicated streets within the Pacific View Tract.

/ / /

156.   On Juanita Way alone, 17 houses have been approved by the Defendant City and built on Lots which are one-half the size of Plaintiff's Property or less, 7 of which take access from a street with a slope that exceeds 14%.

157.   The adoption of the provisions of the Zoning Code, the Subdivision Code, the Streets and Sidewalks Code, the General Plan and the Local Coastal Program which have the effect of prohibiting Plaintiff from constructing a residence on Plaintiff's Property denies to Plaintiff the equal protection of the laws which have been applied to other owners of property on the Juanita Way and throughout other portions of the Pacific View Tract.

158.   By depriving Plaintiff of the equal protection of its laws, Defendant City has damaged Plaintiff in the amount of $4,000,000.

## **PRAYER**

Plaintiff prays for Judgment against Defendant City of Laguna Beach as follows:

1. For damages in the amount of $4,000,000 upon payment of which Plaintiff will convey Lots 7 and 8 in Block 14 of the Pacific View Tract to the City of Laguna Beach;

2. For reasonable attorneys' fees in the prosecution this Action as provided in 42 U.S.C. §1988.

/ / /

3. For such other and further relief as the court may deem proper.

DATED: October 20, 2022          Respectfully submitted,

                                 SHERMAN L. STACEY
                                 GAINES & STACEY LLP


                                 By  *Sherman L. Stacey*
                                     SHERMAN L. STACEY
                                     Attorneys for Plaintiff Patrick Lustig


                        **DEMAND FOR JURY TRIAL**

        Plaintiff hereby demands that the claims set forth in this Complaint be tried by a jury.

DATED: October 20, 2022          SHERMAN L. STACEY
                                 GAINES & STACEY LLP


                                 By  *Sherman L. Stacey*
                                     SHERMAN L. STACEY
                                     Attorneys for Plaintiff Patrick Lustig

COMPLAINT FOR DAMAGES FOR TAKING OF REAL PROPERTY

# Exhibit A

Exhibit A



Description: Orange,CA Tract Map - Book Page 10.23 Page: 1 of 3
Order: 123 Comment:



EXHIBIT A

36

Description: Orange,CA Tract Map - Book Page 10.23 Page: 2 of 3
Order: 123 Comment:



# Exhibit B



EXHIBIT B
CITY OF LAGUNA BEACH GIS AERIAL MAP

Exhibit B

# Exhibit C

Exhibit C



# CITY OF LAGUNA BEACH
## PLANNING DIVISION

August 16, 2021

Mr. Brion Jeannette, Architect
Brion Jeannette Architecture
470 Old Newport Blvd.
Newport Beach, CA 92663

**SUBJECT:**   **ZPC 20-6493 to Extend Juanita Way**

Dear Mr. Jeannette:

Thank you for submitting the above referenced application on May 13, 2021. Staff has completed a preliminary review of your application. Due to missing information and/or inconsistencies between the project plans and the submitted application, as explained further below, it has been determined that the application is incomplete.

The attached list of **Additional Information/Requirements** details information that must be supplied and/or complied with before the City can deem your application complete and begin formal processing. Please be further aware that as this project is processed once the application is complete, there may be a need to clarify or supply new information based upon staff's comments and your responses to staff, particularly if modifications or refinements to the project are proposed.

Please be advised that in accordance with State law, once the additional information is submitted, a new 30-day period will commence in which to determine if the revised application is complete. To simplify and help expedite this review, all of the information should be submitted at one time. For additional information regarding the City's zoning standards, please visit the City's website at the following address: www.lagunabeachcity.net and look under the "Government" tab for "Municipal Code," within which Title 25 sets forth the zoning regulations. City General Plan information is also available on the website.

If you have questions, or would like to discuss your project in further detail, please feel free to contact Martina Caron, Senior Planner at (949) 464-6629 or mcaron@lagunabeachcity.net

**NOTE TO APPLICANT:** IT IS THE RESPONSIBILITY OF THE PROPERTY OWNER TO ENSURE THAT DISCREPANCIES DO NOT EXIST BETWEEN THE PROJECT'S DESCRIPTION ON THE PERMIT, THE ARCHITECTURAL PLANS AND THE STRUCTURAL PLANS. IF DISCREPANCIES EXIST BETWEEN ARCHITECTURAL PLANS AND STRUCTURAL PLANS, THE ARCHITECTURAL PLANS SHALL TAKE PRECEDENCE. ULTIMATELY, THE SCOPE OF WORK AS DESCRIBED ON THE PERMIT AUTHORIZING THE CONSTRUCTION TAKES PRECEDENCE OVER THE PLANS. IF THERE IS A DISCREPANCY BETWEEN THE PLANS AND THE DESCRIPTION ON THE PERMIT, THE PERMIT GOVERNS. IF THE REQUIRED CORRECTION/ITEMS ARE NOT RECEIVED BY THE DEPARTMENT WITHIN SIX MONTHS OF THE DATE OF THIS LETTER, THE DEVELOPMENT WILL AUTOMATICALLY BE DEEMED ABANDONED AND A NEW APPLICATION AND PAYMENT OF CURRENT FEES WILL BE REQUIRED.

<u>Attachments</u>: Additional Information/Requirements

Exhibit C

Final Files/Forms/Planning-Zoning Forms – Updated 7/9/19

**Additional Information/Requirements:** A preliminary review of the submitted application has determined that the following additional information is needed to achieve completeness. Please note in the left-hand margin where corrections have been made or provide a separate response list identifying revisions/corrections, as this will help staff expedite further reviews. Please return this Plan Check List along with two sets of revised plans, staff red-lined plans and any additional documentation noted.

1. **Zoning Plan Check:**

   a) Please refer to the red-lined notes on the plans.

   b) Please provide a conceptual fuel modification plan.

3. **Department Reviews:**

   a) The project has been routed to the Public Works Department for review. Comments will be forwarded to the property file.

4. **Building Site Definition:**

   a) Since the October 16, 2019 Concept Review hearing conducted by the Planning Commission, the project appears to have been redesigned in an attempt to create a legal building site pursuant to Municipal Code Section 25.08.004 ("Building Site," subsection (A)). However, the correct standards are prescribed by paragraphs (1), (2), and (3) of subsection (B) below.  Please provide a plan that is consistent with the following requirements:

   > (B) A building site may be created by the recordation of a tract map or parcel map after approval has been secured from the city planning commission. The creation of any building site shall conform to the following minimum requirements:

   > (1)  Each building site shall be shown on the recorded document as a numbered lot or parcel; and

   > (2) Each building site shall be of sufficient area, width and depth to comply with the minimum requirements of the zoning district in which the site is located; and

   > (3) Each building site shall abut a public or private street, having a right of access for vehicles and pedestrians, and enjoy practical and physical access to such street, for its continuous frontage along the front lot line. Such access road shall be constructed and maintained at a minimum unobstructed width (as described in subsection (A)(3) above) to a length as necessary to connect with existing roads of equal or greater width, shall be designed and maintained to support the imposed loads of fire apparatus and shall be provided with a surface such as asphaltic concrete, Portland cement concrete, or similar approved materials, so as to provide all-weather driving.

5. **California Environmental Quality Act (CEQA):**  Staff believes that this project does not qualify for an exempted class of development and an Initial Study shall be required, which will result in a determination that a Negative Declaration, a Mitigated Negative Declaration or an EIR needs to be prepared. Given the apparent inconsistencies with the General Plan policies as noted on the attached Variance Table, an EIR most likely will be required.

6. **Required Entitlements:**

   a) The proposed project would require a Planning Commission recommendation to the City Council for approval of a road extension and a coastal development permit. The project as currently designed does not comply with the Municipal Code building site criteria (see Section 25.08.004). Once the plans are revised in compliance with the correct building site criteria and a net lot area is determined, variances would appear to be required for the planned road improvements as previously noted in the October 16, 2019 Planning Commission Concept Review staff report. Deviations from the provisions of Municipal Code Titles 21 and 22 may not be eligible for a variance. If all required entitlements are granted, the property would be eligible for a building site designation. Design Review Board approval would then be required to construct a new single-family dwelling.

7. **Project processing issues.** Municipal Code Title 25 provisions relating to variances may only be applied to the standards and regulations of the Zoning Code and with limited discretion. Unless a provision in Titles 21 or 22 of the Municipal Code authorizes a variance by specific reference, the variance procedure is not available to deviate from those requirements. Consequently, several of the proposed Municipal Code and General Plan inconsistencies are ineligible for variance consideration. Therefore, unless the project can be redesigned to eliminate any such inconsistency, the project would appear to be rendered infeasible on this ground alone. Please see the attached table for these inconsistencies.

**Attachments:**

       1. Variance Table

## 2400 Juanita Way Road Extension Variance Table

| Requirement | Comment | Variance allowed |
|---|---|---|
| **Land Use Element (LUE) Lot Density Requirements** | The LUE Limits Residential Low Density lots to 1 to 7 units per acre or 6,222 s.f. The proposed building site, less the fire department turnaround must be over 6,222 s.f. | NO |
| **LBMC Section 21.12.360** | The minimum size of lots shall conform to the requirements of Title 25, and each building site must maintain sufficient dimensions to encompass an imaginary rectangle which conforms to the minimum width and depth requirements of the subject zone (70 Feet by 80 feet). In order to accommodate the required street turnaround area, the net lot area would be reduced under the 6,222 s.f. minimum standard (as required in LUE and noted above). Due to the subtraction of the fire apparatus turnaround area, the property will also be unable to meet the minimum lot width and depth dimensions required by the R-1 Zone (70 and 80 feet, respectively) and the requirement for the minimum rectangle. | NO |
| **Open Space and Conservation Element, Policy 8N:** *Prohibit intrusion of fuel modification programs into environmentally sensitive areas, including chaparral and coastal sage scrub.* | Due to the subject property's location at the urban-wildland interface, the proposed road extension and anticipated residential development would require fuel modification extending into a mapped open space preserve area. A fuel modification zone is a strip of land where combustible vegetation has been removed and/or modified and partially or totally replaced with more adequately spaced, drought-tolerant, fire-resistant plants in order to provide a reasonable level of protection to structures from wildfire. | NO |
| **Open Space and Conservation Element, Policy 14A:** *Require construction and grading to be concentrated on slopes of 30% or less;* | See below. | NO |
| **Open Space and Conservation Element, Policy 14B:** *Prohibit construction and grading on slopes of 45% or greater except on properties previously approved by the subdivision map process and located adjacent to a dedicated accepted right-of-way that has been or can be improved to the City's access standards.* | The conceptual house plans propose a program consisting of 3,743 square feet of habitable area, primarily on the lower and middle levels. The lower and middle levels are designed to step with the hillside and, as shown above, encroach significantly into a greater-than-45-percent slope. The proposed turnaround retaining walls would wholly occur within a slope exceeding 45-percent. The General Plan generally prohibits development within these slope areas. | NO |

Exhibit C

## 2400 Juanita Way Road Extension Variance Table

| | | |
|---|---|---|
| **Open Space and Conservation Element, Policy 14C:** *Discourage the creation of new building sites that would require construction of a new street or a street extension of more than 12% in grade. Prohibit the creation of new building sites that would require construction of a new street or a street extension of more than 14% in grade.* | The proposed road extension would exceed the maximum 14-percent street grade. As shown on Sheet A-1.1 of the architectural drawings, the road extension slope conditions beyond the existing road barrier include slopes of 16-, 20-, and 30-percent. The General Plan prohibits development of the road extension as conceptually designed. | NO |
| **Open Space and Conservation Element, Policy 14G:** *Prohibit the dumping of excess fill within hillside areas, unless necessary for the public's health and safety; and* | There is no evidence that this road extension is for the public's health and safety. | NO |
| **25.10.008 Lot Size** | 70 feet by 80 feet, and mimulus 6,222 (s.f.) per site. Staff does not believe there are special circumstances to support a variance. | YES |
| **21.12.250 Street Grades** | Minimum. Minimum grades for new streets and street extensions shall be not less than one-half of one percent. Variance. Grades for new streets or street extensions exceeding twelve percent, but not in excess of fourteen percent, are allowed only upon the approval of a variance in accordance with Section 25.05.025 of this title. | YES |
| **25.08.004 (B) Building Site- Definition** | Each building site shall abut a public or private street, having a right of access for vehicles and pedestrians, and enjoy practical and physical access to such street, for its continuous frontage along the front lot line (40 feet for a cul-de-sac). Such access road shall be constructed and maintained at a minimum unobstructed width (as described in subsection (A)(3) above) to a length as necessary to connect with existing roads of equal or greater width, shall be designed and maintained to support the imposed loads of fire apparatus and shall be provided with a surface such as asphaltic concrete, Portland cement concrete, or similar approved materials, so as to provide all-weather driving | YES |

Exhibit C